OPINION OF THE COURT
George B. Ceresia, Jr., J.
The instant action for, inter alia, a declaratory judgment and injunctive relief was commenced on November 25, 1992. Plaintiffs seek a declaration under CPLR 3001 that the corporate franchise tax imposed by article 9, §§ 183 and 184 of the New York State Tax Law is unconstitutional under the Foreign Commerce Clause of the United States Constitution (art I, § 8, cl [3]). Plaintiffs maintain that the Tax Law is also violative of the Import-Export Clause (art I, § 10, cl [2]), the Due Process Clause of the Fourteenth Amendment and the *650 Equal Protection Clause of the Fourteenth Amendment. Their complaint alleges violations of 42 USC § 1983 and the treaties between the Governments of the United States and Canada.
Plaintiffs have made a motion for a preliminary injunction enjoining the defendants from any enforcement of the franchise tax against the plaintiffs and for an order granting partial summary judgment.
The relevant provisions of the Tax Law are set forth below.
Section 183 (6) of the New York State Tax Law: "Every like corporation, joint-stock company or association organized, incorporated or formed under the laws of any other state, country or sovereignty shall pay a like tax for the privilege of exercising its corporate franchise, or of doing business, or of employing capital, or of owning or leasing property in this state in a corporate or organized capacity, or of maintaining an office in this state, to be computed upon the basis of measurement herein provided for the taxation of domestic corporations.”
Section 184 (1) of the New York Tax Law: "Every corporation, joint-stock company or association formed for or principally engaged in the conduct of * * * [a transportation or transmission business] * * * for the privilege of exercising its corporate franchise, or of doing business, or of employing capital, or of owning or leasing property in this state in a corporate or organized capacity, or maintaining an office in this state, shall pay a franchise tax which shall be equal to three-quarters of one per centum upon its gross earnings from all sources within this state”.
Section 184 (4) of the New York Tax Law: "Allocation of gross earnings from transportation and transmission services. — (a) General. A transportation * * * corporation shall determine its gross earnings from transportation * * * services within this state (except as otherwise provided in this subdivision) by multiplying its gross earnings from transportátion * * * within and without the state by a fraction, the numerator of which is the taxpayer’s mileage within this state and the denominator of which is the taxpayer’s mileage within and without this state during the period covered by the report or reports required by this chapter.”
As can be seen, the corporate franchise tax is calculated according to proportionate mileage within New York State. New York gross earnings are determined by multiplying a taxpayer’s total earnings by a fraction, the numerator of which is the *651 taxpayer’s mileage within New York State and the denominator of which is the taxpayer’s total mileage, both within and without New York State. The tax rate is applied to the resulting earnings allocated to New York State.
The plaintiffs, Ontario Trucking Association and individual Canadian trucking companies, object to the franchise tax as it has been applied to them in two general respects (among others). In the first, plaintiffs note that the tax only applies to trucking companies who "do business” in New York State. Trucking companies whose trucks merely pass through New York State, without stopping for deliveries or pickups are not required to pay the tax (assuming, of course, they have no other New York contacts). Plaintiffs object to the purported policy of the Department of Taxation and Finance of determining that a Canadian trucking company is "doing business” in New York when the company makes as little as three deliveries or pickups in New York within a one-year period. They argue that it is unfair to impose the franchise tax upon Canadian trucking companies when their contacts with New York are so minimal. Plaintiffs’ second objection to the franchise tax stems from the method of calculation of the tax. Plaintiffs specifically object to the inclusion of "through” mileage in the computation formula, involving mileage where there was no pickup or delivery within New York State (that is, where the truck merely passes through New York, proceeding to some ■ other destination). Plaintiffs argue that the tax is not reasonably related to the revenues derived from New York State business. A Canadian trucking company that routinely passes through New York without stopping, and who, therefore, is not found to be doing business in New York, is never taxed (for purposes of Tax Law §§ 183 and 184) on its New York mileage. In contrast, a Canadian trucker that makes as little as three pickups or deliveries in New York (so argue plaintiffs) is taxed on all of its New York State mileage, including pass-through mileage to other States. Plaintiffs assert that it is violative of the State and Federal Constitutions and patently unfair (1) that the corporate franchise tax be imposed (that is, that a foreign corporation be deemed to be doing business within New York State) by reason of as little as three pickups and deliveries within New York State and (2) that the pass-through mileage to out-of-State destinations be included in the computation of the franchise tax.
The court must first observe, since the instant action is largely a constitutional challenge, that legislative enactments *652 are presumed to be constitutional and that while the presumption is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt (Wiggins v Town of Somers, 4 NY2d 215, 218 [1958]; Maresca v Cuomo, 64 NY2d 242, 250 [1984]). In dealing with the actions of administrative agencies, the general rule is that a party must exhaust administrative remedies prior to resort to the courts (Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52 [1978]). Exhaustion is not always necessary, however, and need not be accomplished where an agency’s action is challenged as either unconstitutional or wholly beyond its grant of power (supra). The court finds that to the extent that plaintiffs seek declaratory relief there was no need for them to exhaust administrative remedies (supra). Moreover, relief in the nature of a tax refund may be awarded in an action for a declaratory judgment, where a tax law is set aside as being unconstitutional (see, American Tel. & Tel. Co. v New York State Dept. of Taxation & Fin., 191 AD2d 61 [1993], affd 84 NY2d 31).
Plaintiffs’ motion for partial summary judgment, predicated upon the first cause of action in its amended complaint, is solely directed to the Foreign Commerce Clause of the United States Constitution (art I, § 8, cl [3]). The clause, also known as the "negative” or "dormant” Commerce Clause, has been interpreted to contain a negative command prohibiting certain State taxation even when Congress has failed to legislate on the subject (see, Quill Corp. v North Dakota, 504 US 298, 309 [1992]). This construction has served the Commerce Clause’s purpose of preventing a State from retreating into economic isolation or jeopardizing the welfare of the Nation as a whole, as might happen if it were free to place burdens upon the flow of commerce across its borders that commerce within its borders would not bear (see, Oklahoma Tax Commn. v Jefferson Lines, 514 US —, —, 115 S Ct 1331, 1335). The provision reflected a central concern of the Framers that was an immediate reason for calling the Constitutional Convention: the conviction that in order to succeed, the new Union would have to avoid the tendencies towards economic Balkanization that had plagued the relations among the Colonies and later among the States under the Articles of Confederation (see, Wardair Canada v Florida Dept. of Revenue, 477 US 1, 7 [1986], quoting Hughes v Oklahoma, 441 US 322, 325-326 [1979]).
The court need not trace the development of case law related to the Commerce Clause (for that see, Oklahoma Tax Commn. v Jefferson Lines, supra). The United States Supreme *653 Court in Complete Auto Tr. v Brady (430 US 274 [1977]) established what has since become known as the Complete Auto four-part test for analyzing a State tax with regard to its potential infringement upon the Interstate Commerce Clause. This test requires consideration of the following factors: whether the activity to be taxed has a substantial nexus with the taxing State; whether the tax is fairly apportioned; whether the tax discriminates against interstate commerce; and whether the tax is fairly, related to the services provided by the State (Complete Auto Tr. v Brady, 430 US 274, 279, supra). This four-part analysis is still followed today (see, Quill Corp. v North Dakota, supra; Oklahoma Tax Commn. v Jefferson Lines, supra; see also, Matter of Tug Buster Bouchard Corp. v Wetzler, 217 AD2d 192 [3d Dept, Jan. 4, 1996]).
The Complete Auto case (supra), however, dealt only with interstate commerce. In Japan Line v County of Los Angeles (441 US 434, 448 [1979]), the Supreme Court determined that a tax affecting foreign commerce raises two concerns in addition to the four set forth in Complete Auto (supra). The first is a concern for the enhanced risk of multiple taxation, subjecting foreign commerce to double taxation to which domestic commerce is not exposed. The second relates to the Federal Government’s capacity to " 'speak with one voice when regulating commercial relations with foreign governments’ ” (Japan Line v County of Los Angeles, 441 US 434, 449). The additional two-part test set forth in Japan Line (supra) is still applicable today, with some modification (see, Barclays Bank v Franchise Tax Bd., 512 US 298 [1994]; Oklahoma Tax Commn. v Jefferson Lines, supra).
Defendants point out that with respect to interstate commerce, New York courts have already ruled upon the franchise tax under discussion. In American Trucking Assns. v New York State Tax Commn. (120 Misc 2d 191 [Sup Ct, Albany County 1982], affd 60 NY2d 745, appeal dismissed 467 US 1247) a constitutional challenge, based in part upon the Commerce Clause, was brought against Tax Law § 184. The court found that the franchise tax satisfied all four factors of Complete Auto Tr. v Brady (supra).
The court further finds that Tax Law §§ 183 and 184 satisfy the two additional tests set forth in Japan Line v County of Los Angeles (supra). Taking the issue of multiple taxation first, the New York Court of Appeals in Reuters Ltd. v Tax Appeals Tribunal (82 NY2d 112 [1993]) had occasion to pass upon a challenge to the New York corporate franchise tax imposed *654 upon petitioner, Reuters, a corporation organized in the United Kingdom, based upon its worldwide net income. Although petitioner earned profits abroad, its New York office incurred losses. Petitioner computed its corporate franchise taxes based only upon United States income (and thus paid no tax). The New York Department of Taxation and Finance employed a worldwide net income apportionment method which resulted in imposition of substantial corporate franchise tax. The Court of Appeals, referring to Bass, Ratcliff & Gretton v State Tax Commn. (266 US 271), held that New York’s apportionment formula did not violate the Foreign Commerce Clause and that New York was justified in attributing to itself a just proportion of the profits earned by such unitary business (see, Reuters Ltd. v Tax Appeals Tribunal, supra).
In Container Corp. v Franchise Tax Bd. (463 US 159 [1983]), the United States Supreme Court held that a California corporate franchise tax imposed upon an out-of-State corporation with subsidiaries in foreign countries (but deemed to be a unitary business) did not violate the Foreign Commerce Clause by reason of multiple taxation. The tax formula, geared to the business’s income, was based in equal parts upon three factors: payroll, property and sales within the State of California. The Court distinguished the Japan Line case (supra) noting that the former dealt with a tax on tangible property, while the Container Corp. case involved a corporate franchise tax based upon income. The Court concluded that double taxation was not necessarily inevitable and that it would be "perverse” to abandon the formula allocation method for an arms-length taxation method[1] which could also result in double taxation (see, Container Corp. v Franchise Tax Bd., 463 US 159, 193, supra).
Similarly, in Barclays Bank v Franchise Tax Bd. (512 US 298, supra), the United States Supreme Court upheld the California franchise tax, as applied to situations where there was a domestic corporation with foreign parents or where there was a foreign corporation with either foreign parents or foreign subsidiaries. Justice Ginsburg, writing for the majority, stated in part: "Container Corp.’s approval of this very tax, in the *655 face of a multiple taxation challenge, did not rest on any insufficiency in the evidence that multiple taxation might occur; indeed, we accepted in that case the taxpayer’s assertion that multiple taxation in fact had occurred. Id., 463 U.S. at 187, 103 S. Ct. at 2951 ('[T]he tax imposed here, like the tax in Japan Line, has resulted in actual double taxation, in the sense that some of the income taxed without apportionment by foreign nations as attributable to appellant’s foreign subsidiaries was also taxed by California as attributable to the State’s share of the total income of the unitary business of which those subsidiaries are a part.’); see also id., at 187, n. 22, 103 S. Ct., 2951, n. 22.” (Barclays Bank v Franchise Tax Bd., 512 US 298, 318, supra.)
In view of the fact that the instant corporate franchise tax is based upon gross earnings, apportioned according to revenue miles in New York State, the court concludes that, as in Container Corp. (supra) and Barclays (supra), the tax does not contravene the prohibition against multiple taxation (see, Reuters Ltd. v Tax Appeals Tribunal, supra).
With respect to the second additional Commerce Clause test set forth in Japan Line v County of Los Angeles (supra) (whether the tax impairs the Federal Government’s ability to "speak with one voice when regulating commercial relations with foreign governments”) plaintiffs point out that the Canadian government has submitted a Diplomatic Note of Protest with regard to New York’s corporate trucking franchise tax policy. Plaintiffs also indicate, inter alla, that Canada has not imposed a like corporate franchise tax on trucking companies of the United States operating in Canada. The court is referred to 19 CFR 123.14 which renders plaintiffs’ trucks duty-free.
There is no proof that Tax Law §§ 183 and 184 transgress any existing treaty between Canada and the United States. Plaintiffs argue that the subject franchise tax violates the current income tax treaty between the United States and Canada.[2] Article II of the treaty (the Convention), entitled "Taxes Covered”, recites in part as follows:
"1. This Convention shall apply to taxes on income and on capital imposed on behalf of each Contracting State, irrespective of the manner in which they are levied.
*656 "2. The existing taxes to which the Convention shall apply are * * * (b) In the case of the United States, the Federal income taxes imposed by the Internal Revenue Code.
"3. The Convention shall apply also to: (a) Any identical or substantially similar taxes on income”.
The tax in question, being a corporate franchise tax on gross earnings, apportioned according to New York mileage, is not identical to or substantially similar to the Federal income tax. The court concludes that plaintiffs have failed to demonstrate that Tax Law §§ 183 and 184 violate the Convention.
Defendants maintain and it is not controverted that the United States-Canada Free-Trade Agreement, approved by Congress in 1988[3] and the North American Free Trade Agreement, approved in 1993 [4] do not prohibit imposition by New York State of a corporate franchise tax on Canadian trucking companies.
The court finds it significant that the United States Supreme Court has repeatedly held that a State’s worldwide combined reporting requirement for purposes of corporate franchise taxation of multinational unitary businesses does not violate the "one voice” standard. In Barclays Bank v Franchise Tax Bd. (supra) it was stated: "As in Container Corp. and Wardair, we discern no 'specific indications of congressional intent’ to bar the state action here challenged. Our decision upholding California’s franchise tax in Container Corp. left the ball in Congress’ court; had Congress, the branch responsible for the regulation of foreign commerce, see US Const. Art. I, § 8, cl. 3, considered nationally uniform use of separate accounting 'essential,’ Japan Line, supra, 441 U.S., at 448, 99 S. Ct., at 1821, it could have enacted legislation prohibiting the States from taxing corporate income based on the worldwide combined reporting method. In the 11 years that have elapsed since our decision in Container Corp., Congress has failed to enact such legislation.” (Barclays Bank v Franchise Tax Bd., 512 US 298, 324, supra.) The Barclays Court found that Congress’ voice had not spoken and that the tax did not, therefore, violate the Foreign Commerce Clause (Barclays Bank v Franchise Tax Bd., supra).
In Wardair Canada v Florida Dept. of Revenue (477 US 1 [1986], supra) the Supreme Court rejected a Commerce Clause challenge to Florida’s tax on the sale of fuel to common carri *657 ers, including airlines. Air carriers were taxed on all aviation fuel purchased in Florida, without regard to the amount the carrier consumed within the State or the amount of its instate business. A Canadian airline which challenged the tax conceded that the tax satisfied the Complete Auto criteria, but argued that it threatened the ability of the Federal Government to speak with one voice. The Supreme Court noted that there was no Federal policy regarding tax exemptions on aviation fuel and found that in the absence of such policy, the United States had at least acquiesced in State taxation of fuel used by foreign carriers in international travel (Wardair Canada v Florida Dept. of Revenue, 477 US 1, 12).
In Itel Containers Intl. Corp. v Huddleston (507 US 60 [1993]) a Tennessee tax on the lease of cargo containers used exclusively in international shipping was upheld as not violative of the Foreign Commerce Clause. Supreme Court reasoned that because the Tennessee tax was not among the taxes proscribed by various conventions, statutes and regulations that the most rational inference to be drawn was that the tax was permitted.
Given the absence of evidence of Federal policy which in some manner indicates a disapproval of the instant corporate franchise tax, the court concludes that there is no violation of the "one voice” test of the Foreign Commerce Clause.
In view of all the foregoing, the court concludes that the plaintiffs have failed to meet their burden that Tax Law §§ 183 and 184 contravene the Foreign Commerce Clause.
Turning to count II of plaintiffs’ amended complaint, the court must consider plaintiffs’ contention that the Import-Export Clause of the United States Constitution has been violated (US Const, art I, § 10, cl [2]). In Michelin Tire Corp. v Wages (423 US 276 [1976]) the United States Supreme Court developed a three-part test to determine whether State action violates the Import-Export Clause: "The Framers of the Constitution thus sought to alleviate three main concerns by committing sole power to lay imposts and duties on imports in the Federal Government with no concurrent state power: [1] the Federal Government must speak with one voice when regulating commercial relations with foreign governments, and tariffs, which might affect foreign relations, could not be implemented by the States consistently with that exclusive power; [2] import revenues were to be the major source of revenue of the Federal Government and should not be diverted to the States; and [3] harmony among the States might be disturbed unless seaboard States, with their crucial ports of entry, were prohibited from *658 levying taxes on citizens of other States by taxing goods merely flowing through their ports to the inland States not situated as favorably geographically.” (Michelin Tire Corp. v Wages, 423 US 276, 285-286, supra.)
The first and third of the above tests have already been reviewed by this court in this decision as part of its Foreign Commerce Clause analysis (see, Itel Containers Intl. Corp. v Huddleston, 507 US 60, 77, supra).[5] With regard to the second component (diversion of import revenues from the Federal Government), it is enough to observe that the corporate franchise tax in question does not draw revenue from the importation process and does not divert import revenue from the Federal Government (supra). The tax is not levied on imported goods or the trucks that may transport such goods (supra). Rather, the tax is imposed upon the franchise or privilege of doing business within New York State’s borders. Under all of the circumstances the court concludes that plaintiffs have not met their burden of demonstrating a violation of article I (§ 10, cl [2]) of the United States Constitution.
With respect to plaintiffs’ third cause of action (count III of the amended complaint), the court notes that "the Due Process Clause of the Fourteenth Amendment imposes two requirements: a 'minimal connection’ between the interstate activities and the taxing State and a rational relationship between income attributed to the State and the intrastate values of the enterprise” (Mobil Oil Corp. v Commissioner of Taxes, 445 US 425, 436-437). The court is mindful that physical presence of the vendor in the taxing State is not required as a minimal connection to support the State’s jurisdiction to tax under due process (see, Quill Corp. v North Dakota, 504 US 298, supra; Matter of Orvis v Tax Appeals Tribunal, 86 NY2d 165, 175). The court finds that the activities of plaintiffs, in availing themselves of the safe business environment, physical infrastructure and protections afforded by the State of New York, provide ample connection for imposition of the franchise tax. The court also finds that the taxing formula of Tax Law § 184 furnishes a rational relationship between the income attributed to the State and the intrastate values of plaintiffs’ enterprises. More importantly, in American Trucking Assns. v New York State Tax Commn. (120 Misc 2d 191, supra) it was *659 found that Tax Law § 184 did not violate the Due Process Clause of the Federal Constitution. The court concludes that plaintiffs have not met their burden of demonstrating that the subject taxes violate the Due Process Clause of the Federal Constitution.
Plaintiffs’ fourth cause of action (count IV of the amended complaint) alleges a violation of the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs allege that the corporate franchise tax, apportioned on gross earnings, regardless of whether or not plaintiffs generated any net profit in New York (or worldwide, for that matter) is unfair when compared with the franchise tax on net income imposed upon nontransportation and nontransmission companies (see, Tax Law, art 9-A, § 210).
The Fourteenth Amendment of the Federal Constitution forbids States from denying to any person within their jurisdiction the equal protection of the laws, but does not prevent the States from making reasonable classifications among persons (see, Western & S. Life Ins. Co. v State Bd. of Equalization, 451 US 648 [1981]). Since the situation at bar does not involve a suspect class or fundamental right, it would appear that the rational basis standard of review is appropriate to determine if the defendant’s action violated the Equal Protection Clause (see, Massachusetts Bd. of Retirement v Murgia, 427 US 307; Maresca v Cuomo, 64 NY2d 242, 250). An argument similar to that made by plaintiffs in this case was made in American Trucking Assns. v New York State Tax Commn. (supra), i.e., that "[Tax Law § 184] imposes a more burdensome tax on motor carriers than upon others with no rational justification” (120 Misc 2d 191, 195). The lower court stated as follows: "The court takes judicial notice of the fact that motor carriers receive substantial benefits from the State through the use of its highway system, thus increasing the costs to the State for highway maintenance, traffic regulation and enforcement and other related costs. Such services rendered by the State of New York exceed general services rendered to other businesses. The plaintiffs have failed to provide any evidence that the highway use taxes and gasoline taxes cover all expenses incurred by the State directly related to highway truck traffic. However, even such proof would not require a finding that the statute is unconstitutional (Commonwealth Edison Co. v Montana, [453 US 609]; Aero Tr. Co. v Commissioners, [332 US 495]). It is therefore the determination of this court that the possibility of an increased tax burden upon the plaintiffs has a rational *660 justification.” (American Trucking Assns. v New York State Tax Commn., 120 Misc 2d 191, 195, affd 60 NY2d 745, appeal dismissed 467 US 1247, supra.)
Under the circumstances the court finds that there is a rational basis for imposition of the tax and that plaintiffs have not met their burden of proving a violation of the Equal Protection Clause (supra).
In count VI of plaintiffs’ amended complaint, plaintiffs allege that Tax Law § 184 violates the "Convention Between the United States and Canada With Respect to Taxes on Income and on Capital” (Convention) under the Supremacy Clause of the United States Constitution (US Const, art VI, cl [2]). The court has already determined that there is no proof that Tax Law §§ 183 and 184 violate the Convention (see discussion herein of the "One Voice” component of the Japan Line Foreign Commerce Clause test). The court concludes that plaintiffs have failed to demonstrate that Tax Law §§183 and 184 violate the Convention and, therefore, have failed in their burden to show a violation of the Federal Supremacy Clause.
Under count VII of plaintiffs’ amended complaint, plaintiffs allege that the corporate franchise tax imposed under Tax Law §§ 183 and 184 violates the State Due Process Clause (NY Const, art I, § 6) in that the tax does not have a substantial nexus with New York State, does not bear any relationship to the benefits conferred by New York State and because its measure is not reasonably related to the extent of plaintiffs’ contact with New York. The court notes that issue of compliance with the New York State Due Process Clause was determined in American Trucking Assns. v New York State Tax Commn. (supra, particularly, 60 NY2d, at 746). The court finds that plaintiffs have failed in their burden to establish a violation of NY Constitution, article I, § 6.

. Under the "arms-length” approach every corporation, even if closely tied to the other corporations, is treated for most, but not all, purposes as if it were an independent entity dealing at arm’s length with its affiliated corporations and subject to taxation only by the jurisdictions in which it operates and only for the income it realizes on its own books (see, Container Corp. v Franchise Tax Bd.., 463 US 159, 185, supra).

. Entitled "Convention Between the United States of America and Canada for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion With Respect to Taxes on Income and on Capital” (TIAS 11087 [1984], 1984 WL 161896.)

. Public Law 100-449.

. Public Law 103-182.

. As stated in Itel (supra), the "one voice” component of the Michelin test is the same as the "one voice” test in Japan Line (supra); the "state harmony” component parallels the Complete Auto requirements of the foreign and domestic Commerce Clause.