OPINION OF THE COURT
Levine, J.
On these appeals, the State Commissioner of Taxation and Finance seeks to overturn two decisions of the Appellate Division[1] holding that Vermont vendors of products purchased by New Yorkers for use in this State were immunized from the duty to collect State compensating use taxes (Tax Law § 1110) under the Commerce Clause (US Const, art I, § 8) of the Federal Constitution. Petitioner Orvis Company, Inc. (Orvis) sells, at both retail and wholesale, camping, fishing and hunting equipment, casual and outdoor clothing and food and various gift items. Orvis’ retail sales were almost entirely through mail-order catalog purchases shipped from Vermont by common carrier or the United States mail. Orvis also sold merchandise at wholesale to New York retail establishments. Concededly, Orvis employees visited New York retailers to whom it sold merchandise during the three-year audit period.
Relying upon Quill Corp. v North Dakota (504 US 298), the Appellate Division held that in the absence of a substantial physical presence by Orvis personnel in New York, the imposition of the duty to collect use taxes from its New York mail- *170 order purchasers contravened the Commerce Clause. The Court concluded that Orvis’ "sporadic activities in New York” failed to meet the substantial physical presence standard and, therefore, the assessment of the tax was invalid (204 AD2d, at 918).
Petitioner Vermont Information Processing, Inc. (VIP) markets computer software and hardware to beverage distributors in New York and elsewhere throughout the United States. In most instances, its customers’ orders were filled through shipments by common carrier or United States mail. An audit of VIP’s invoices and sales records, however, showed visits by its employees to New York customers to resolve problems and give additional instructions in connection with the use of VIP software programs, and occasionally for installing software. The Appellate Division again concluded that those activities were insufficient to constitute the requisite substantial physical presence of VIP in this State and annulled the determination assessing the tax.
We do not read Quill Corp. v North Dakota to make a substantial physical presence of an out-of-State vendor in New York a prerequisite to imposing the duty upon the vendor to collect the use tax from its New York clientele. The Appellate Division erroneously applied that exacting standard in both cases.
I.
The true holding of Quill Corp. v North Dakota can best be understood by considering the case in the context of its position in the evolution of Supreme Court doctrine limiting the authority of a State to assess or impose a duty to collect taxes arising out of the economic activity of a foreign business engaged in interstate commerce. The constitutional limitations on such authority have been derived from two sources. The first is the Due Process Clause of the Fourteenth Amendment of the US Constitution, pertaining to the jurisdiction to tax, or the "taxing power”, of a State (Wisconsin v Penney Co., 311 US 435, 445). The second source is the so-called "dormant” or "negative” Commerce Clause, by virtue of which the constitutional grant of power to Congress "[t]o regulate commerce * * * among the several States” (US Const, art I, § 8, cl [3]) has been interpreted as implicitly prohibiting, even in the absence of Congressional regulation, unduly burdensome or discriminatory State taxation of transactions or entities en *171 gaged in interstate commerce (see, Oklahoma Tax Commn. v Jefferson Lines, 514 US —, —, 115 S Ct 1331, 1335-1336 [Apr. 3, 1995]; Quill Corp. v North Dakota, 504 US, at 309, supra).
Under its Due Process Clause analysis, the Supreme Court has fashioned a requirement that, for a State to validly tax an interstate commercial activity, there must be "some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax” (Miller Bros. Co. v Maryland, 347 US 340, 344-345; see, Moorman Mfg. Co. v Bair, 437 US 267, 272).
As to Commerce Clause challenges, one strand of earlier cases applied a formalistic approach prohibiting the imposition of what the Court deemed a "direct” tax on interstate commerce (see, Spector Motor Serv. v O'Connor, 340 US 602; Freeman v Hewit, 329 US 249). Except for such taxes found to directly burden interstate commerce, the Court recognized that the Commerce Clause did not "relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing the business” (Western Live Stock v Bureau, 303 US 250, 254). Accordingly, other forms of nondiscriminatory taxation on interstate transactions were permitted. A nexus was required, however, between the taxing State and the entity, property or activity it sought to tax.
Little difficulty was encountered in finding the required local nexus with respect to sales and compensating use taxes. In McGoldrick v Berwind-White Co. (309 US 33), the vendor’s responsibility to collect the tax on the sale of coal by a Pennsylvania producer to a New York City purchaser was upheld because "the tax is conditioned upon a local activity, delivery of goods within the state upon their purchase for consumption” (id., at 58 [emphasis supplied]).
Until Quill Corp. v North Dakota, the constitutionally required nexus between the taxing State and the activity, entity or property subject to the tax was applied indistinguishably for purposes of both Due Process and Commerce Clause analysis, i.e., a definite link or minimum connection (see, National Bellas Hess v Department of Revenue, 386 US 753, 756-757; Scripto v Carson, 362 US 207, 210-211). Some physical presence of the vendor in the taxing State was noted as a factor justifying the imposition of the sales and use tax collection obligation. In Felt & Tarrant Co. v Gallagher (306 US 62) that presence was found in the foreign seller’s engagement of two *172 nonemployee, commissioned sales agents to solicit orders and the rental of office space for them. In Scripto v Carson (supra), 10 wholly commissioned, nonemployee, "advertising specialty brokers” (id., at 209), retained on a part-time, nonexclusive basis to solicit sales, constituted a sufficient physical connection.
In National Bellas Hess v Department of Revenue (386 US 753, supra), the Court for the first time explicitly made some physical presence of the vendor in the taxing State a requirement under both the Commerce and Due Process Clauses for charging the vendor with the duty of collecting a use tax on mail-order purchases by residents of that State. Physical presence within the taxing State was required, irrespective of the degree to which the vendor may have availed itself of the benefits and protection of the taxing State in other ways, such as by "regularly and continuously engaging] in 'exploitation of the consumer market’ of [that State]” (id., at 762 [Portas, J., dissenting] [quoting Miller Bros. Co. v Maryland, supra]). In Bellas Hess, the vendor’s patronage in the taxing State was exclusively through mail-order purchases, and its only contact with its customers was by way of the United States mails or by common carrier.
The Court in Bellas Hess gave three reasons for requiring the vendor’s physical presence in the taxing State: (1) without some physical presence, there would be no fair basis for making interstate commerce bear a share of the cost of local government; (2) a contrary rule would require the Court "to repudiate totally the sharp distinction”, relied upon by State taxing authorities, between mail-order sellers with local outlets or solicitors and "those who do no more than communicate with customers in the State by mail or common carrier as part of a general interstate business” (386 US, at 758 [emphasis supplied]); and (3) permitting imposition of the duty of collection of the tax in that case would subject national mail-order businesses to oppressive administrative and record-keeping burdens "in a virtual welter of complicated obligations to local jurisdictions with no legitimate claim to impose 'a fair share of the cost of the local government’ ” (id., at 759-760).
As reflected in the cases following Bellas Hess, the requirement of the vendor’s physical presence in the taxing State was not unduly exacting. In Standard Steel Co. v Washington Revenue Dept. (419 US 560), the Court upheld the assessment of a Washington State gross receipts tax on a foreign vendor’s *173 sales to the Boeing Company against Due Process and Commerce Clause challenges. The Court found a sufficient vendor’s physical presence in the State to justify the tax in the person of a single resident engineer-employee who operated out of his home in Seattle and whose responsibilities were to consult with Boeing on anticipated needs for the vendor’s parts in Boeing’s aircraft manufacturing process and to follow up on shipping or other problems in using the vendor’s product (id., at 562-563). In Goldberg v Sweet (488 US 252), at issue was Illinois’ imposition of a 5% excise tax on interstate telephone calls which the taxing statute required to be collected by long-distance telephone carriers, such as GTE Sprint Communications (Sprint), through their billings. Sprint challenged the tax, but it and the other parties did not contest (and the Court agreed) that the local nexus requirement was met because the tax was restricted to telephone calls originating or terminating in Illinois and charged to an Illinois service address (id., at 263). In concluding that a sufficient local nexus existed, the Court did not inquire further into the extent of Sprint’s physical presence in the State.
Two other decisions are significant for their articulation of the criteria to determine whether a given tax imposed on interstate commercial activity passes constitutional muster under the Commerce Clause. In Complete Auto Tr. v Brady (430 US 274), the Court repudiated the artificial and confusing formalistic distinction between direct and indirect taxes on interstate commerce, and overruled Spector Motor Serv. v O’Connor (supra) and Freeman v Hewit (supra). It explicitly confirmed its agreement with the approach of the alternative line of decisions (some of which we have discussed), such as Western Live Stock v Bureau (303 US 250, supra). The Court characterized those decisions as having "considered * * * [the] practical effect [of the taxing statute] and * * * sustained [the] tax * * * when the tax [1] is applied to an activity with a substantial nexus with the taxing State, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the State” (430 US, at 279). The Complete Auto articulation of the four-pronged standard for determining the validity of a State tax on interstate commercial activity under the dormant Commerce Clause remains the prevailing test, with refinements, to this day (see, Oklahoma Tax Commn. v Jefferson Lines, 514 US, at —, 115 S Ct, at 1337, supra).
One such refinement of Complete Auto was made at the *174 same term in National Geographic v California Equalization Bd. (430 US 551). There the Court upheld a use tax collection obligation with respect to interstate mail-order sales of the Society from its District of Columbia home office, on the basis of the physical presence of two National Geographic magazine advertising sales offices in the taxing State. The Court made two significant rulings: (1) the required nexus with the taxing State need not necessarily be directly related to the activity being taxed, "but [could] simply [be] whether the facts demonstrate 'some definite link, some minimum connection, between [the taxing State and] the person ... it seeks to tax’ ” (id., at 561 [quoting Miller Bros. Co. v Maryland, supra] [emphasis in original]); and (2) the required physical presence of the vendor in the taxing State must be more than the " 'slightest presence’ ” (id., at 556).
II.
It is with the foregoing decisional evolution of negative Commerce Clause doctrine by the Supreme Court in mind that we turn to Quill Corp. v North Dakota (504 US 298, supra). Quill Corp., like National Bellas Hess, involved a vendor exclusively engaged in a mail-order business with substantial patronage in the taxing State, but whose only connection with its customers in that State was by common carrier or the United States mail. The Supreme Court of North Dakota held, nonetheless, that social, technological, economic, commercial and legal changes since Bellas Hess was decided rendered the holding in that case obsolete. The North Dakota court concluded that physical presence was no longer necessary in the case of a mail-order vendor who systematically directed its marketing efforts at the taxing State. The State Supreme Court pointed out that North Dakota had expended significant resources to create and nurture an economic climate supporting a demand for Quill’s products, had provided a legal infrastructure that protected and secured Quill’s financial interests, and had disposed as waste many tons of Quill’s catalogs and promotional materials mailed to the State. Therefore, the North Dakota Supreme Court reasoned, the Commerce Clause should not bar making Quill pay its fair share for those benefits and protections it received from the State. The United States Supreme Court noted that it was thus confronted with a pull in one direction from the approach emphasized in Complete Auto Tr. adjudging a State tax *175 for Commerce Clause purposes based upon economic realities and practical effects, and the opposing magnetism of stare decisis. "Having granted certiorari * * * we must either reverse the State Supreme Court or overrule Bellas Hess. While we agree with much of the State Court’s reasoning, we take the former course” (504 US, at 301-302 [emphasis supplied]).
In actuality, however, the Supreme Court in Quill adopted a middle course. It overruled so much of Bellas Hess as required some physical presence of the vendor as a "minimum connection” in the taxing State to support the jurisdiction to tax under the Due Process Clause (504 US, at 306, 307-308).[2] However, the Supreme Court in Quill elected to adhere to the Bellas Hess precedent requiring some physical presence of an interstate mail-order vendor in the taxing State for validity under the Commerce Clause. This course was not adopted without some apparent reluctance. Thus, the Court stated that, "[w]hile contemporary Commerce Clause jurisprudence might not dictate the same result were the issue to arise for the first time today, Bellas Hess is not inconsistent with Complete Auto” (504 US, at 311). It further stated, '[ajlthough we agree with the state court’s assessment of the evolution of our cases, we do not share its conclusion that this evolution indicates that the Commerce Clause ruling of Bellas Hess is no longer good law” (504 US, at 314 [emphasis supplied]).
The rationale of the Supreme Court in Quill for continuing to require the physical presence of the vendor in the taxing State, however, was not the same primarily relied upon in Bellas Hess, that only by requiring a physical presence in the taxing State can the vendor justifiably be called upon to pay its fair share of the cost of local government. The Supreme Court agreed with the North Dakota Supreme Court’s conclusion that, under the more "flexible” approach of current Commerce Clause jurisprudence (504 US, at 314), the quid pro quo for State taxation could be found in the benefits and protections the State confers in providing for a stable and secure legal-economic environment for a mail-order vendor’s substantial marketing efforts aimed at the taxing State. Rather, the justification for continuing to require a physical presence of the vendor in the taxing State was based on two *176 other grounds. First, Bellas Hess furthers the ends of the Commerce Clause by furnishing a " 'bright-line’ test[ ]” (504 US, at 314), a "demarcation of a discrete realm of commercial activity that is free from interstate taxation” (id., at 315). The Bellas Hess rule, thus, serves to assure tax immunity to "vendors 'whose only connection with customers in the [taxing] State is by common carrier or the United States mail’ ” (id., at 315 [emphasis supplied]). Such a bright-line demarcation benefits national commerce by avoiding the litigation-provoking controversy and confusion of imprecise constitutional standards, and fosters investment by settling expectations (id.). Second, adherence to the Bellas Hess physical presence requirement satisfies the especially applicable demands of stare decisis. "[T]he Bellas Hess rule has engendered substantial reliance and has become part of a basic framework of a sizable industry. The 'interest in stability and orderly development of the law’ that undergirds the doctrine of stare decisis’ * * * therefore counsels adherence to settled precedent” (504 US, at 317).
III.
As the foregoing discussion demonstrates, both the literal language of the Quill decision and consideration of its place in the evolution of Supreme Court Commerce Clause jurisprudence refute the Appellate Division’s conclusion, urged by Orvis and VIP here, that "Quill * * * increased the requisite threshold of in-State physical presence from any measurable amount of in-State people or property to substantial amounts of in-State people or property” (204 AD2d, at 917 [emphasis supplied]). Quill simply cannot be read as equating a substantial physical presence of the vendor in the taxing State with the substantial nexus prong of the Complete Auto test, as the Appellate Division’s interpretation would require.
First, neither in Bellas Hess nor in the cases preceding it, or succeeding it up to Quill did the Court express any insistence that the physical presence of the interstate vendor be substantial for a valid taxation of sales of or imposition of a use tax collection duty upon the vendor. Bellas Hess itself, in requiring the vendor’s physical presence, explicitly stated that it was applying a definite link or minimum connection requirement, which was the then prevailing nexus standard for both Due Process and Commerce Clause analysis in interstate commerce taxation cases (see, 386 US, at 756-757, supra). *177 Surely as a matter of simple logic and semantics, the Supreme Court was not applying a substantial physical presence requirement when it upheld the State tax on the in-State activity of the interstate vendor in the following cases: Felt & Tarrant Co. v Gallagher (306 US 62, supra) (two nonemployee, commissioned sales solicitors); Scripto v Carson (362 US 207, supra) (10 part-time, nonemployee, nonexclusive, commissioned sales brokers); Standard Steel Co. v Washington Revenue Dept. (419 US 560, supra) (one engineer-consultant operating an office out of his home); Goldberg v Sweet (488 US 252, supra) (an interstate long-distance telephone carrier’s billing to an inState service address for calls originating or terminating in the taxing State).
As we have shown from the Court’s own expressions in Quill, rather than expanding upon the Bellas Hess minimum connection physical presence requirement, the Quill decision cannot be substantively construed as other than a somewhat begrudging retention of the Bellas Hess physical presence requirement — a "result”, as the Court in its opinion remarked, "not dictate[d] * * * were the issue to arise for the first time today” (Quill Corp. v North Dakota, 504 US, at 311, supra).
Even more importantly, acceptance of the thesis urged by Orvis and VIP — that Quill made the substantial nexus prong of the Complete Auto test an in-State substantial physical presence requirement — would destroy the bright-line rule the Supreme Court in Quill thought it was preserving in declining completely to overrule Bellas Hess. Inevitably, a substantial physical presence test would require a "case-by-case evaluation of the actual burdens imposed” (504 US, at 315) on the individual vendor involving a weighing of factors such as number of local visits, size of local sales offices, intensity of direct solicitations, etc., rather than the clear-cut line of demarcation the Supreme Court sought to keep intact by its decision in Quill. Thus, ironically, the interpretation of Quill urged by the vendors here would undermine the principal justification the Supreme Court advanced for its decision in that case, the need to provide certainty in application of the standard and with it, repose from controversy and litigation for taxing States and the nearly $200 billion-a-year mail-order industry, with respect to sales and use taxes on interstate transactions.
Finally, confirmation that the Supreme Court never intended to elevate the nexus requirement to a substantial *178 physical presence of the vendor can be found in Oklahoma Tax Commn. v Jefferson Lines (514 US —, 115 S Ct 1331, supra), the Supreme Court’s most recent pronouncement in the interstate sales and use tax field. In that case, the Court did not apply a substantial physical presence test, but instead strictly utilized the substantial nexus prong of the Complete Auto test without even passing reference to the substantiality of the physical presence of the vendor (an interstate bus company) in the taxing State. Relying upon landmark cases decided before Quill, the Court focused on the in-State activity involved in the taxed transaction, such as the site of the origination or consummation of the transaction the State sought to tax (see, id., 514 US, at —, 115 S Ct, at 1338 [citing McGoldrick v Berwind-White Co., 309 US 33, supra; Goldberg v Sweet, 488 US 252, supra]). "Oklahoma is where the ticket is purchased, and the service originates there. These facts are enough for concluding that '[t]here is "nexus” aplenty here’ ” (id., 514 US, at —, 115 S Ct, at 1338).
 We think the foregoing survey of the decisional law discloses the true import of the physical presence requirement within the substantial nexus prong of the Complete Auto test under contemporary Commerce Clause analysis. While a physical presence of the vendor is required, it need not be substantial. Rather, it must be demonstrably more than a "slightest presence” (see, National Geographic v California Equalization Bd., 430 US 551, 556, supra). And it may be manifested by the presence in the taxing State of the vendor’s property or the conduct of economic activities in the taxing State performed by the vendor’s personnel or on its behalf.
IV.
Applying the foregoing standard for a vendor’s physical presence in the taxing State we think is required under Quill Corp. and Bellas Hess, we conclude that there was substantial evidence to support the State Tax Appeals Tribunal’s determination that the activity of Orvis and of VIP in this State were sufficient to impose the obligation to collect compensating use taxes on their taxable retail sales to New York customers. Neither Orvis nor VIP sustained its definite burden of establishing immunity under the Commerce Clause from that tax collection obligation (see, General Motors v Washington, 377 US 436, 441; Norton Co. v Department of Revenue, 340 US 534, 537), nor their general burden under our case law of proving *179 sufficient facts to overcome an assessment and to demonstrate that the determination of the State Tax Appeals Tribunal was clearly erroneous (Matter of Grace v New York State Tax Commn., 37 NY2d 193, 195-196).
In a March 1981 written response to an inquiry from a State Sales Tax auditor, Orvis’ treasurer described its operations in New York as follows: "Some salesmen who reside in Vermont travel into New York to call on non-Orvis owned stores. The salesmen in no way bind the Orvis Company; all orders are approved in Vermont.” A subsequent audit of Orvis’ records disclosed that during the three years under audit, Orvis’ annual sales to New York customers varied from $1 million to $1.5 million, about 15% of which consisted of wholesale purchases made by from 9 to 16 unaffiliated New York retail establishments. Contrary to the holding of the Appellate Division, the foregoing evidence supported a reasonable inference by the Tax Appeals Tribunal that Orvis’ substantial wholesale business in this State was generally accomplished by means of its sales personnel’s direct solicitation of retailers through visits to their stores in New York, subject only to approval of all orders in Vermont.[3] This sales activity in New York would presumptively suffice as a nexus to impose a use tax collection responsibility (see, Felt & Tarrant Co. v Gallagher, 306 US 62, supra; see also, National Geographic v California Equalization Bd., 430 US 551, supra [required vendor’s presence need not directly relate to the taxed activity]).
It was not unreasonable for the Tribunal to give little if any weight to the affidavits Orvis submitted of its president and treasurer averring that there were only 12 visits to New York retailers by Orvis personnel during the audit period and not for the purposes of sales promotion but only to discuss problems such as concerning shipping and to check on how Orvis products were displayed. It is true, as noted by the Appellate Division, that the Regulations of the State Department of Taxation and Finance authorize the submission of affidavits in *180 lieu of oral testimony (see, 20 NYCRR 3000.10 [d] [1]). The existence of the regulation did not, however, prevent the Tribunal from rejecting the credibility of the affidavits submitted under the circumstances presented in this case. The fact is, on the crucial issue in this litigation, Orvis declined to expose its witnesses to cross-examination by producing them at the hearing before the State Tax Appeals Tribunal. As the Tribunal also noted in discrediting the affidavits, their description of the purposes of Orvis contacts with retailers in this State was indeed inconsistent with the admissions against Orvis’ interest contained in its initial response to the inquiry of New York taxing authorities. The Tribunal, in relying on the foregoing factors did not act arbitrarily or capriciously in concluding that the Orvis affidavits lacked credibility.
Moreover, the affidavits of Orvis’ officers described the trips to New York of Orvis personnel as "in a loop”, suggesting systematic visitation to all of its as many as 19 wholesale customers on the average of four times a year. This demonstrably exceeded the "slightest presence” of Orvis in New York (National Geographic v California Equalization Bd., supra). Without even a credible let alone cogent explanation of why the March 1981 portrayal of Orvis’ sales activity physically occurring in New York was inaccurate, the State Tax Appeals Tribunal was not arbitrary or capricious in concluding that Orvis failed to meet its burden of demonstrating its constitutional immunity. We have also considered Orvis’ additional objections to the assessment and penalties imposed and find them equally unpersuasive. However, additional arguments raised by Orvis to the Appellate Division, and not considered by that Court, need to be remitted to that Court for its disposition. Also before us is Orvis’ cross appeal to this Court seeking recovery of attorney’s fees. Inasmuch as Orvis has not succeeded on the merits of its constitutional challenge to the tax assessment, it has no entitlement to such fees.
There likewise was substantial evidence to support the Tax Appeals Tribunal’s determination upholding the sales and use tax assessment against VIP. Evidence was submitted from which the Tribunal could reasonably infer that VIP’s hardware and software sales agreements obligated it to provide a charge-free visit of a VIP computer software installer at its beverage-distributor customer’s site in New York if problems necessitating the visit occurred within the first 60 days of installation. Moreover, VIP’s invoices showed charges for travel expenses to its New York customers’ locations on 41 *181 occasions, in order to resolve the more intractable problems involving its computer hardware and software, during the three-year audit period, in which VIP had 154 taxable transactions in New York. There was ample support in the record for the State Tax Appeals Tribunal’s finding that VIP’s trouble-shooting visits to New York vendees and its assurances to prospective customers that it would make such visits enhanced sales and significantly contributed to VIP’s ability to establish and maintain a market for the computer hardware and software it sold in New York. VIP’s activities in New York were, thus, definite and of greater significance than merely a slightest presence (see, Standard Steel Co. v Washington Revenue Dept., 419 US 560, 562, supra [in-State presence of a single employee of vendor "made possible the realization and continuance of valuable contractual relations between (the interstate vendor and its customer)”]). As with Orvis, we find VIP’s additional objections to the assessment and penalties equally without merit.
Accordingly, the judgment in Matter of Orvis Co. v Tax Appeals Tribunal should be modified in accordance with the opinion herein, and the matter remitted to the Appellate Division for consideration of issues raised but not reached at that Court. The judgment in Matter of Vermont Information Processing v Tax Appeals Tribunal should be reversed, and the determination of respondent Tax Appeals Tribunal reinstated and confirmed and the petition dismissed, with costs.

. Matter of Orvis Co. v Tax Appeals Tribunal, 204 AD2d 916; Matter of Vermont Information Processing v Tax Appeals Tribunal, 206 AD2d 764.

. Because minimum physical presence in the taxing State is no longer required to support jurisdiction to tax under the Due Process Clause, the authority of Miller Bros. Co. v Maryland (347 US 340), a pure due process case — heavily relied upon by the dissent — is considerably weakened.

. A form letter Orvis sent to retail establishments showed that Orvis extended credit to wholesale purchasers and that it imposed a "minimum stocking order of $3000” upon its wholesale customers. This evidence supports the conclusions (1) that the wholesale orders from sales solicitations in New York (admitted in Orvis’ March 1981 letter) were indeed substantial, and (2) Orvis, in extending credit to New York wholesale purchasers, necessarily relied upon and utilized the banking and legal systems of this State.